UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LIBERTY SACKETS HARBOR, LLC; RIVER
NORTH LLC; and PHILIP J. SIMAO,

                              Plaintiffs,

v.                                                          5:18-CV-0242
                                                            (GTS/TWD)
VILLAGE OF SACKETS HARBOR, its Village
and Planning Board; JANET QUINN, Planning
Board Chairperson; DAVID B. GEURTSEN, in
his individual capacity; and CONBOY, McKAY,
BACHMAN & KENDALL, LLP,

                              Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

CENTOLELLA LYNN D'ELIA & TEMES LLC                          DAVID C. TEMES, ESQ.
   Counsel for Plaintiffs
AXA Tower 1, Suite 1905
100 Madison Street
Syracuse, New York 13202

BARTH SULLIVAN BEHR                                         DAVID H. WALSH, IV, ESQ.
   Counsel for Defendants Village of Sackets
   Harbor, Janet Quinn and David Geurtsen
224 Harrison Street
Syracuse, New York 13202

CONBOY, McKAY, BACHMAN & KENDALL, LLP                       PETER L. WALTON, ESQ.
   Counsel for Defendant CMBK
407 Sherman Street
Watertown, New York 13601-9990

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

   Currently before the Court, in this real property action filed by Liberty Sackets Harbor

("Liberty"), LLC, River North LLC, and Philip J. Simao (collectively "Plaintiffs") against the

Village of Sackets Harbor ("Village"), Janet Quinn, David B. Geurtsen, and Conboy, McKay, Bachman & Kendall, LLP ("CMBK") (collectively "Defendants") pursuant to the First, Fifth, and Fourteenth Amendments of the United States Constitution and the Takings, Equal Protection, and Due Process Clauses of the New York State Constitution, are the following two motions: (1) Defendant CMBK's motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) based on (a) lack of standing, (b) application of laches, (c) failure to exhaust state remedies, and (d) failure to state a claim upon which relief can be granted (Dkt. No. 4); and (2) the other Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) based on (a) mootness and ripeness grounds, (b) failure to exhaust state remedies, and (c) failure to state a claim upon which relief can be granted (Dkt. No. 6). For the reasons set forth below, Defendant CMBK's motion is granted, and the other Defendants' motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiffs' Complaint[1]

Generally, liberally construed, Plaintiffs' Complaint asserts seven causes of action. (Dkt. No. 2 [Pls.' Compl.].) First, Plaintiffs claim that Defendants violated their rights under the Fifth and Fourteenth Amendments of the United States Constitution by effecting a regulatory taking of their real property and denying them the property interest in using, enjoying, and selling that real property. (*Id.* at ¶¶ 78-107.) More specifically, Plaintiffs allege that Defendants' actions, including changing zoning regulations and placing barriers in the way of approval of their plan for using their real property without any legitimate public or governmental interest, constitute a

---

[1]      Pursuant to Defendants' petition for removal of February 26, 2018, this action was removed from the Jefferson County Supreme Court to this Court on February 26, 2018. (Dkt. No. 1.)

regulatory taking because those actions prevented Plaintiffs from developing or selling any portion of the property. (*Id.*)

Second, Plaintiffs claim that Defendants violated their right to free speech under the First Amendment and retaliated against them for exercising those rights. (*Id.* at ¶¶ 108-20.) More specifically, Plaintiffs allege that Defendants improperly refused to receive, consider, and approve Plaintiffs' land use application in retaliation for (a) Plaintiff Simao's protected speech in opposing the proposed sale of a building to a client of Defendant Geurtsen's, and (b) Plaintiff Liberty's petitioning the Village for redress of grievances. (*Id.*)

Third, Plaintiffs claim that Defendants violated their right to substantive due process under the Fourteenth Amendment by infringing on their liberty interest in pursuing and engaging in a lawful occupation as a developer. (*Id.* at ¶¶ 121-37.) More specifically, Plaintiffs allege that (a) they have a valid property interest in using, enjoying, and selling their real property and in being able to pursue an occupation of their choice as a land developer, and (b) Defendants' deprivation of these rights was so outrageously arbitrary as to constitute a gross abuse of governmental authority. (*Id.*)

Fourth, Plaintiffs claim that Defendants violated their right to procedural due process under the Fourteenth Amendment by failing to provide them with notice and an opportunity to be heard regarding actions that would prevent them from using and developing their real property. (*Id.* at ¶¶ 138-47.) More specifically, Plaintiffs allege that Defendants failed to provide them with notice of, and an opportunity to respond to, (a) their intentions regarding Plaintiffs' property, (b) their grounds for refusing to accept Plaintiffs' August 2014 application, (c) governmental meetings impacting Plaintiffs' land use proposals, and (d) new zoning changes that would impact the August 2014 application. (*Id.*)

Fifth, Plaintiffs claim that Defendants denied Plaintiffs equal protection of law in violation of the Fourteenth Amendment by singling Plaintiffs out for adverse treatment as a "class-of-one." (*Id.* at ¶¶ 148-59.) More specifically, Plaintiffs allege that Defendants' refusal to accept Plaintiffs' land use application for minor imperfections, their application of "spot zoning" to Plaintiffs' property, and their imposition of unwarranted and unjustified fees resulted in Plaintiffs being treated in a distinctly different manner from other owners and developers of real property in the Village. (*Id.*)

Sixth, Plaintiffs claim that Defendants' conduct also violated the Equal Protection and Due Process Clauses of the New York State Constitution. (*Id.* at ¶¶ 160-65.)

Seventh, and last, Plaintiffs claim that Defendants' conduct also violated the Takings Clause of the New York State Constitution. (*Id.* at ¶¶ 166-69.)

**B.      Parties' Briefing on Defendants' Motions to Dismiss**

**1.      Defendant CMBK's Memorandum of Law**

Generally, Defendant CMBK moves to dismiss Plaintiffs' Complaint for seven reasons. (Dkt. No. 4, Attach. 2, at 11-22 [Def. CMBK's Mem. of Law].) First, Defendant CMBK argues that Plaintiffs River North and Simao lack standing to assert any claims because, although those Plaintiffs own interests in Plaintiff Liberty as members/shareholders, only Plaintiff Liberty itself owns the subject property and therefore only Plaintiff Liberty's rights have been alleged to be violated. (*Id.* at 11-13.)

Second, Defendant CMBK argues that the dispute between the parties has been satisfied, waived, or is barred by the doctrine of laches as a result of the agreement of January 2015 to reduce the number of residential parcels on Plaintiffs' property from 12 to 10. (*Id.* at 13-15.)

4

Defendant CMBK argues that this agreement settled the dispute that Plaintiffs raise in this litigation.  (*Id.*)

Third, Defendant CMBK argues that the availability of state post-deprivation remedies (in the form of an Article 78 proceeding under New York law) precludes Plaintiffs' claim for procedural due process pursuant to 42 U.S.C. § 1983.  (*Id.* at 15-16.)

Fourth, Defendant CMBK argues that Plaintiffs have not stated a plausible claim as to their First, Third, Sixth, and Seventh claims because they have not alleged facts plausibly suggesting a cognizable property interest that has been infringed by Defendants' actions.  (*Id.* at 16-17.)

Fifth, Defendant CMBK argues that Plaintiffs have stated a First Amendment retaliation claim because they have not alleged facts plausibly suggesting that Defendants threatened them, or that they were deterred from exercising their Constitutional rights as a result of Defendants' conduct.  (*Id.* at 17-18.)

Sixth, Defendant CMBK argues that Plaintiffs have not stated an equal protection claim because they have not alleged facts plausibly suggesting sufficiently similar individuals who received disparate treatment.  (*Id.* at 18-19.)

Seventh, and last, Defendant CMBK argues that all the claims against it are barred by the state actor doctrine because Plaintiffs have not alleged that it is a state actor, that it was acting under the color of state law, or that it was involved in the unlawful activities alleged in the Complaint.  (*Id.* at 19-22.)

## 2. The Other Defendants' Memorandum of Law

Generally, the other Defendants move to dismiss Plaintiffs' Complaint for nine reasons. (Dkt. No. 6, Attach. 2, at 11-30 [Other Defs.' Mem. of Law].) First, the other Defendants argue that Plaintiffs' claims are moot because Plaintiffs voluntarily entered into an agreement to reduce the number of lots on the property in 2015, thus eliminating any case or controversy between the parties. (*Id.* at 11-12.)

Second, the other Defendants argue that Plaintiffs' claims under the Takings, Equal Protection, and Due Process Clauses of the United States and New York Constitutions are unripe because Plaintiffs have failed to show a final decision by the Village as to Plaintiffs' application, or that Plaintiffs sought (and were denied) just compensation by reasonably certain and adequate state court procedures. (*Id.* at 12-17.)

Third, the other Defendants argue that Plaintiffs are barred from asserting claims for violation of their due process rights because they failed to exhaust their post-deprivation remedies, namely by failing to seek relief through an Article 78 proceeding. (*Id.* at 17-18.)

Fourth, the other Defendants argue that Plaintiffs have failed to state a federal takings claim because they failed to allege facts plausibly suggesting that they have a protected property interest, or that they sought just compensation and the request was denied. (*Id.* at 19.)

Fifth, the other Defendants argue that Plaintiffs have failed to state a First Amendment claim because, although Plaintiffs have pled a protected interest, they have not alleged facts plausibly suggesting that Defendants' actions were motivated or caused by Plaintiffs' exercise of their rights or that Defendants' actions had a chilling effect on the right to petition for redress of grievances. (*Id.* at 20-23.)

Sixth, the other Defendants argue Plaintiffs have failed to state a substantive due process claim because (a) they have not alleged facts plausibly suggesting that Defendants lacked discretion to deny their petition and therefore have not alleged a valid property right, and (b) they have not alleged facts plausibly suggesting that Defendants' actions were so outrageously arbitrary as to constitute a gross abuse of governmental power given that Defendants had a legitimate interest in decreasing the density of lots in the Village through the enacted zoning changes. (*Id.* at 25-27.)

Seventh, the other Defendants argue that Plaintiffs have failed to state a procedural due process claim because (a) they have not alleged facts plausibly suggesting a valid property right, (b) they failed to exhaust the available state remedies, and (c) they admittedly reached an agreement with the Village in 2015. (*Id.* at 27.)

Eighth, the other Defendants argue that Plaintiffs have failed to state an equal protection claim because they have not alleged facts plausibly suggesting the existence of any sufficiently similar persons for the purposes of that claim. (*Id.* at 28-30.)

Ninth, and last, the other Defendants argue that Plaintiffs have failed to state causes of action for their state law claims for the same reasons as discussed above in relation to the analogous federal claims. (*Id.* at 30.)

### 3. Plaintiffs' Opposition Memorandum of Law

Generally, Plaintiffs assert nine arguments in opposition to Defendants' motions. (Dkt. No. 13, at 10-18 [Pls.' Opp'n Mem. of Law].) First, Plaintiffs argue that they have a vested right in the original subdivision project as it was approved by the Village Board because they had already commenced work, substantially completed construction, and paid taxes on the assessment based on that original subdivision plan. (*Id.* at 10-12.)

Second, Plaintiffs argue that the January 2015 agreement including the revised subdivision plan does not constitute a waiver of Plaintiffs' rights or render this action moot. (*Id.* at 12.) More specifically, Plaintiffs argue that the revised subdivision plan has not been accepted by the Village Board or filed by Plaintiffs, noting that Defendants agreed to hold the requirement to file the maps in abeyance while the lawsuit is pending. (*Id.*) Plaintiffs argue that, even if the January 2015 agreement mitigates or limits Plaintiffs' damages, it does not foreclose them. (*Id.*)

Third, Plaintiffs argue that they have stated plausible claims under the Due Process, Equal Protection, and Takings Clauses. (*Id.* at 12-15.) As to the requirement of showing a final decision, Plaintiffs argue that the lack of a final decision in this case was due to Defendants' own actions in refusing to accept Plaintiffs' reapproval application based on alleged "incompleteness." (*Id.* at 13.) Plaintiffs argue that they should not be bound by the lack of a final decision where, as here, Defendants prevented a final decision. (*Id.*) As to the denial of compensation, Plaintiffs argue that Defendants' removal of this case from state to federal court essentially satisfies this requirement because otherwise the removal would leave Plaintiffs without any legal recourse. (*Id.* at 14-15.)

Fourth, Plaintiffs argue that they have stated a claim for an improper taking of their real property. (*Id.* at 15-16.) More specifically, Plaintiffs argue that Defendants' actions denied Plaintiffs two of the lots on the property that had originally been approved, prevented Plaintiff from building additional residences on the property, interfered with Plaintiffs' reasonable investment-backed expectations, and singled Plaintiffs out to ensure that they could not complete the original subdivision; Plaintiffs argue also that these actions were taken with animosity and in bad faith. (*Id.*)

Fifth, Plaintiffs argue that they have stated a claim for violations of their substantive and procedural due process rights. (*Id.* at 16-17.) More specifically, Plaintiffs argue that they have a vested right in their property and that Defendants' refusal to accept their application to reapprove the original subdivision and the decision to re-zone the property were arbitrary and gross abuses of governmental authority. (*Id.* at 16.) Plaintiffs also argue that the form that was purportedly insufficient (thus rendering their reapproval application incomplete) was not even necessary to that application because an environmental impact assessment had already been completed. (*Id.* at 16-17.) Plaintiffs argue that Defendants' refusal to accept the form that was provided on their website was an arbitrary abuse of power. (*Id.*)

Sixth, Plaintiffs argue that they have stated a claim for denial of their First Amendment rights. (*Id.* at 17.) More specifically, Plaintiffs argue that they have protected interests in the rights to petition for redress of grievances and free speech, and that these rights were violated by (a) the Village's refusal to accept their application in retaliation for Plaintiff Simao's objection to the proposed sale of a building (in which sale Defendant Geurtsen was representing one of the parties), and (b) the chilling of speech that occurred when Plaintiffs were compelled to assent to the revised subdivision, which resulted in a loss of two parcels from the original subdivision plan. (*Id.*)

Seventh, Plaintiffs argue that the Complaint sufficiently identifies similarly situated persons for the purposes of a motion to dismiss. (*Id.* at 17-18.)

Eighth, Plaintiffs argue that Plaintiff Simao has standing as to both the First Amendment and property-based claims because (a) retaliation occurred as a result of his protected speech and he experienced a violation of his rights and endured emotional distress and diminution of his

interest in Plaintiff Liberty as a result of that retaliation, and (b) he has standing even if his injuries are duplicative of those suffered by Liberty. (*Id.* at 18.)

Ninth, and last, Plaintiffs argue that Defendant CMBK's motion to dismiss based on the state actor doctrine is premature because discovery is needed to determine the true nature of the relationship between Defendants. (*Id.*)

### 4.    Defendant CMBK's Reply Declarations

In reply to Plaintiffs' opposition memorandum of Law, Defendant CMBK's counsel submitted two declarations.[2] (Dkt. No. 14, at 2-4 [Walton Decl.]; Dkt. No. 15, at 2-4 [Burrows Decl.].) In the declaration of Peter Walton, Esq., Defendant CMBK makes the following three arguments: (1) the Complaint does not set forth any allegations refuting Defendant CMBK's argument that it is not a state actor, and Plaintiffs have not cited any case law or statutes refuting that argument; (2) the dispute in this litigation was resolved by the previous settlement between the parties; and (3) Defendant CMBK continues to rely on the other arguments originally asserted in its memorandum of law. (Dkt. No. 14, at 2-4 [Walton Decl.].)

In the declaration of James Burrows, Esq., Defendant CMBK argues that the claims (which all arise from the August 2014 subdivision application and the August/September 2014 determination on that application) were settled by an agreement in 2015 and there therefore is no ongoing conflict. (Dkt. No. 15, at 2-4 [Burrows Decl.].) Mr. Burrows notes that any litigation related to approval of that agreement acted as a stay of Plaintiffs' obligations related to their application and development of the property, and that previous litigation brought by neighbors

_____

[2]    Defendant CMBK is respectfully reminded that, in this Court, an affidavit or declaration may not contain legal arguments. N.D.N.Y. L.R. 7.1(a)(2).

against Plaintiffs and the Village was resolved in October 2017. (*Id.*) Mr. Burrows also notes that both parties agreed that the agreement constituted a stay of Plaintiffs' obligations during litigation, but that the determinations challenged by Plaintiffs in this matter were rendered before the 2015 agreement (which constituted a settlement of those matters). (*Id.*)

### 5. The Other Defendants' Reply Memorandum of Law

Generally, the other Defendants assert five arguments in reply to Plaintiffs' arguments. (Dkt. No. 17, at 5-11 [Other Defs.' Reply Mem. of Law].) First, the other Defendants argue that the Court is not permitted to consider any of the evidence submitted with Plaintiffs' opposition memorandum of law because Plaintiffs have not provided any reason to justify considering that extrinsic evidence. (*Id.* at 5.)

Second, the other Defendants argue that Plaintiffs failed to address Defendants' arguments regarding dismissal for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiffs did not articulate the legal standard applicable to a Fed. R. Civ. P. 12(b)(1) motion in their opposition memorandum of law. (*Id.* at 5-6.)

Third, the other Defendants argue that Plaintiffs have failed to rebut their arguments that Plaintiffs' claims are moot as a result of the January 2015 agreement because Plaintiffs' arguments are unsupported by law or fact, are misleading, or are inapplicable. (*Id.* 6-7.)

Fourth, the other Defendants argue that Plaintiffs have failed to rebut their arguments related to ripeness and failure to exhaust state law remedies. (*Id.* at 7-9.) More specifically, the other Defendants argue that Plaintiffs' argument that Defendants made a final resolution impossible is conclusory and undermined by Plaintiffs' own admission that they agreed to reduce the number of parcels in the original subdivision plan. (*Id.* at 8.) The other Defendants also

argue that Plaintiffs' argument that the removal from state court to federal court satisfied the denial of compensation requirement is misplaced because Plaintiffs have not alleged that they have made any attempt to commence a state claim for compensation (unlike the case on which they rely). (*Id.* at 8-9.) The other Defendants argue that the case is not ripe until Plaintiffs have exhausted their remedies under Article 78. (*Id.* at 8.)

Fifth, and last, the other Defendants argue that Plaintiffs have failed to state a cognizable First Amendment claim because (a) they have not even addressed the element regarding Defendants' motivation for their conduct and (b) they have ignored the fact that they were able to exercise their First Amendment rights through the act of submitting a revised application. (*Id.* at 9-11.) The other Defendants additionally argue that Plaintiff Simao does not have standing to pursue this claim, and that the matter is not ripe because there has been no final decision. (*Id.* at 10-11.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"Failure of subject matter jurisdiction . . . is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exits." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . , a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable

12

to the party asserting it."  *Morrison v. Nat'l Austl. Bank. Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

"Indeed, a challenge to the jurisdictional elements of a plaintiff's claim allows the [c]ourt 'to

weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"  *Celestine*

*v. Mt. Vernon Neighborhood Health Ctr.*, 289 F. Supp. 2d 392, 399 (S.D.N.Y. 2003), *aff'd* 403

F.3d 76 (2d Cir. 2005).  In assessing the existence of subject-matter jurisdiction, the "court can

refer to evidence outside the pleadings."  *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

    **B.**    **Legal Standard Governing a Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief

can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a

challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de*

*novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between

permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard

established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal."  *Jackson*, 549 F.

Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has

held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ.

P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of

what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at

212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of

"enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d

ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F.

Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an

appellate decision holding that a complaint had stated an actionable antitrust claim under 15

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957),

that "a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an

actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice.  *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.

## III.    ANALYSIS

### A.    Whether Plaintiffs' Claims Against Defendant CMBK Should Be Dismissed Based on the Lack of State Action

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendant CMBK's motion papers.  *See, supra,* Parts I.B.1 and I.B.4 of

this Decision and Order.  To those reasons, the Court adds the following analysis.

"[T]he under-color-of-state-law element of [Section] 1983 excludes from its reach merely

private conduct, no matter how discriminatory or wrongful."  *American Mfrs. Mut. Ins. Co. v.

Sullivan*, 526 U.S. 40, 50 (1999).  "[I]t is well-settled that private attorneys do not act under the

color of state law and are not state actors simply by the virtue of their state-issued licenses to

practice law."  *Rouse v. De Lorenzo*, 11-CV-1466, 2011 WL 953875, at *2 (N.D.N.Y. Dec. 20,

2011) (Homer, M.J.) (collecting cases), *adopted by* 2012 WL 6114969 (N.D.N.Y. Dec. 10, 2012)

(McAvoy, J.). A private attorney may be held liable, however, "if he had been a 'willful participant in joint activity with the State or its agents.'" *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975). "Joint action with a state official can be found only if it is shown that the private individual acted in 'willful collaboration' with a state actor to deprive the plaintiff of a federal right," and "[s]uch collaboration is stated only if a plaintiff can plead more than 'conclusory allegations' or naked assertions." *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012).

In opposition to Defendant CMBK's motion to dismiss based on a failure to allege facts plausibly suggesting that it is a state actor, Plaintiffs concede that whether Defendant CMBK is a state actor "cannot be determined upon the Pleadings," arguing instead that "Plaintiffs shall be entitled to discovery with regard to the nature of the relationship between the Defendants." (Dkt. No. 13, at 18 [Pls.' Opp'n Mem. of Law].) Plaintiffs' argument is contrary to the purpose underlying the pleading-sufficiency standards applicable in federal court. As noted above in Part II of this Decision and Order, Plaintiffs must allege facts suggesting that its claim is plausible, not merely conceivable. *Twombly*, 127 S. Ct. at 1965. The Complaint is devoid of factual allegations plausibly suggesting that Defendant CMBK was willfully collaborating with the other Defendants for the purpose of depriving Plaintiffs of their rights. (*See generally* Dkt. No. 2 [Pls.' Compl.].)

Plaintiffs allege that Defendant CMBK acted as counsel for the Planning Board and (at times) the Village during the relevant period. (*Id.* at ¶ 10.) Plaintiffs also allege that Defendant Geurtsen (an attorney with CMBK) was personally involved in reviewing their applications and made certain representations to Plaintiffs regarding those applications, and that he maintained

personal animosity towards Plaintiff Simao that was the basis of his advice to the Planning Board to reject Plaintiffs' application in August 2014. (*Id.* at ¶¶ 48, 50, 55-56, 61-69.) However, even if Plaintiffs have alleged facts plausibly suggesting willful collaboration between Defendant Geurtsen and the Village (through the Planning Board) sufficient to treat Defendant Geurtsen as a state actor, they have not alleged any fact plausibly connecting Defendant CMBK (a separate legal entity) to Defendant Geurtsen's acts other than the fact that Defendant Geurtsen is an attorney at Defendant CMBK. It is clear from Plaintiffs' own statements that this relationship cannot be determined without discovery and that Plaintiffs simply do not possess the facts necessary to state a plausible claim against Defendant CMBK; unwarranted fishing expeditions such as the one that Plaintiffs urge the Court to allow it to conduct here are precisely what the pleading standard set forth in *Twombly* and *Iqbal* was intended to prevent. Because Plaintiffs cannot, by their own admission, allege facts plausibly suggesting that Defendant CMBK was a state actor, Plaintiffs' federal claims against Defendant CMBK must be dismissed.

As to Plaintiffs' state law claims, New York law requires a showing that the action was a state action rather than a private action in order to allow claims pursuant to the New York State Constitution. *See McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffuers & Warehouse & Helpers of Am., AFL-CIO*, 107 F. Supp. 2d 311, 317-18 (S.D.N.Y. 2000) ("New York courts have recognized a dichotomy between state action, which is subject to scrutiny under the New York State Constitution, and private action, which is insulated from such scrutiny.").

New York courts consider multiple factors when determining whether an action is a state action or a private action for the purposes of a claim under the Due Process Clause of the New York State Constitution, including (a) the source of the authority for the private action, (b)

whether the state is so entwined with the regulation of private conduct as to constitute state activity, and (c) whether there has been a delegation of what has traditionally been a state function to a private person. *McGovern*, 107 F. Supp. 2d 317-18 (citing *SHAD Alliance v. Smith Haven Mall*, 488 N.E.2d 1211, 1217 [N.Y. 1985]). Plaintiffs have not alleged any facts plausibly suggesting that Defendant CMBK was exercising any kind of state authority or that the state was regulating their representation of Defendants in any way related to Plaintiffs' claims. Plaintiffs' state law due process claim is therefore barred for failure to show that Defendant CMBK's actions were state (as opposed to private) actions.

The requirement for state action is the same under the Equal Protection Clause of the New York State Constitution as under the federal Constitution; Plaintiffs' state law equal protection claim is therefore barred for the same reasons discussed above as to the federal claims. *McGovern*, 107 F. Supp. 2d at 318.

As to Plaintiffs' takings claim under the New York State Constitution, Plaintiffs have not alleged facts plausibly suggesting that Defendant CMBK (as opposed to Defendant Geurtsen) was in any way involved in the alleged taking of their property, much less that Defendant CMBK did so under the authority or direction of, or in collaboration with, a state actor. The Court therefore finds that this claim is also barred against Defendant CMBK.

For all of the above reasons, the Court grants Defendant CMBK's motion to dismiss on the ground of lack of state action.

**B.     Whether Plaintiffs River North and Simao Have Standing to Pursue Their Claims**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant CMBK's motion papers and the other Defendants' reply

19

memorandum of law. *See, supra,* Parts I.B.1, I.B.4, and IB.5 of this Decision and Order. To those reasons, the Court adds the following analysis.

To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be redressed by a favorable decision. *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015). "The plaintiff . . . bears the burden 'clearly to allege facts [in his complaint] demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 [1975]). Plaintiffs must also show that they have "prudential standing," which includes a "general prohibition on a litigant's raising another person's legal rights." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015). The Second Circuit has recognized that "[a] shareholder–even a sole shareholder–does not have standing to assert claims alleging wrongs to the corporation." *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987). This is because "[t]he right of a corporation to bring suit under section 1983 eliminates the need for recognition of a right in shareholders to bring suit on the corporation's behalf." *Sterngass v. Bowman*, 563 F. Supp. 456, 459 (S.D.N.Y. 1983), *aff'd* 742 F.2d 1440 (2d Cir. 1983). Rather, the plaintiff must have been injured in a "personal and individual way" in order to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Defendant CMBK argues that Plaintiffs River North and Simao do not have standing to pursue their claims in this case because they have not alleged an injury independent of the injury to Plaintiff Liberty. (Dkt. No. 4, Attach. 2, at 11-13 [Def. CMBK Mem. of Law].) In the Complaint, Plaintiffs allege that Plaintiff River North is a domestic limited liability company,

that Plaintiff Simao is an individual residing in Jefferson County, New York, and that both Plaintiff River North and Plaintiff Simao are "members" of Plaintiff Liberty. (Dkt. No. 2, at ¶¶ 2-4 [Pls.' Compl.].) In their opposition memorandum of law, Plaintiffs elaborate that, "[t]hrough their membership interest in Liberty Sackets, Simao and River North, the Plaintiffs acquired an interest in the real property located on General Smith Drive in the Village." (Dkt. No. 13, at 5 [Pls.' Opp'n Mem. of Law].) This statement, though somewhat lacking in clarity, appears to indicate that Plaintiffs River North and Simao's interest in the property was as a result of their membership in Plaintiff Liberty rather than any independent ownership.

The Court notes that, as an initial matter, Plaintiffs do not appear to oppose Defendant CMBK's argument that Plaintiff River North lacks standing; their response in opposition discusses only Plaintiff Simao. (Dkt. No. 13, at 18 [Pls.' Opp'n Mem. of Law].) Additionally, Plaintiffs also appear to oppose only Defendant CMBK's arguments that Plaintiff Simao did not have standing to pursue the First Amendment claim; they do not discuss precisely why he has standing as to the other claims. (*Id.*) As a result, Defendant CMBK's burden with respect to these claims has been lightened such that, to succeed, its arguments need only possess facial merit (which they do). *See Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 & n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (finding that the defendant's burden on its motion to dismiss was lightened due to the plaintiff's failure to address the defendant's request to dismiss a cause of action based on the expiration of the applicable statute of limitations, and collecting cases in which failure to respond to an argument resulted in a "modest" burden for the threshold party); *accord Trombley v. O'Neill*, 929 F. Supp. 2d 81, 100 (N.D.N.Y. 2013) (Suddaby, J.); *Jenkins v. Liadka*, 10-CV-1223, 2012 WL 4052286, at *8 (N.D.N.Y. Sept. 13, 2012) (Suddaby,

J.); *Hunt v. Cmty. Gen. Hosp.*, 11-CV-0415, 2012 WL 3151542, at *4 (N.D.N.Y. Aug. 2, 2012) (Suddaby, J.).

In any event, as to the claims under the Takings Clause, the Due Process Clause, and the Equal Protection Clause, the basis for all of these claims is Defendants' alleged unconstitutional refusal to consider the application to reapprove the original subdivision and the decision to change the zoning regulations applicable to Plaintiffs' land. (Dkt. No. 2, at ¶¶ 78-107, 121-59 [Pls.' Compl.].) However, as noted above, Plaintiffs River North and Simao acquired interest in the land related to the subdivision application only as a consequence of being a member of Plaintiff Liberty; Plaintiffs do not allege that Plaintiffs River North and Simao held an interest in that land separate and apart from Plaintiff Liberty. Because Plaintiffs River North and Simao are members of Plaintiff Liberty and they do not allege an injury-in-fact that is separate from that suffered by Plaintiff Liberty, they do not have standing to assert claims based on wrongs done to Plaintiff Liberty. *See Jones*, 836 F.2d at 736; *Sterngass*, 563 F. Supp. at 459.

Similarly, as to the First Amendment claim, Plaintiffs argue that Plaintiff Simao has standing because he engaged in free speech independent of the asserted First Amendment claim as to Plaintiff Liberty, and his individual rights were violated by Defendants retaliation (i.e., refusing to consider or reapprove the application for the original subdivision) because he endured emotional distress and the diminution of value of his interest in Plaintiff Liberty. (Dkt. No. 13, at 18 [Pls.' Opp'n Mem. of Law].) Even if Plaintiffs have asserted an independent act by Plaintiff Simao that is protected under the First Amendment, the Court is not persuaded that they have shown that Plaintiff Simao suffered an independent injury as the result of Defendants' alleged retaliation; the injuries alleged are still related to the injury suffered by Plaintiff Liberty,

given that Plaintiff Simao's alleged emotional distress and potential financial losses stemmed from an action taken by Defendants against Plaintiff Liberty.  *See Jones*, 836 F.2d at 736 ("Even though Jones may have felt personally aggrieved by defendants' failure to award contracts to the Corporation, and even though he may have faced the risk of financial loss as a result, the district court correctly dismissed Jones' individual claims for lack of standing."); *Alphas v. City of New York Bus. Integrity Comm'n*, 15-CV-3424, 2017 WL 1929544, at *3 (S.D.N.Y. May 9, 2017) (finding the plaintiff lacked standing to sue where all of the alleged injuries were either [a] direct injuries to the Company, or [b] indirect injuries flowing from harm to the Company, and therefore were not distinct from the injuries to the Company).  Plaintiffs therefore have not established that Plaintiff Simao had been injured in a "personal and individualized way" sufficient to confer standing to pursue the First Amendment claim.

For all of the above reasons, the Court grants Defendant CMBK's motion to dismiss the claims of Plaintiffs River North and Simao based on the alternative ground of lack of standing.

## C.  Whether Plaintiffs' Claims Are Moot as a Result of the January 2015 Agreement Between the Parties

After carefully considering the matter, the Court answers this question in the negative for the following reasons.

"'[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *British Int'l Ins. Co., Ltd. v. Seguros La Republica, S.A.*, 354 F.3d 120, 122 (2d Cir. 2003) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 [1974]).  "A case is not moot, however, 'so long as the appellant retains some interest in the case, so that a decision in its favor will inure to its benefit.'" *British Int'l Ins. Co., Ltd.*, 354 F.3d at 123 (quoting *New England Health Care Employees Union, Dist. 1199, SEIU AFL-CIO v.*

*Mount Sinai Hosp.*, 65 F.3d 1024, 1029 [2d Cir. 1995]).  Indeed, "[a] case becomes moot . . . 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party,'" such that, "'[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'"  *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 669 (2016).

        The parties do not dispute that an agreement was reached in 2015 between Plaintiffs and Defendants pursuant to which Plaintiffs agreed to decrease the number of residential parcels on their property from 12 to 10.  Plaintiffs argue in their opposition memorandum of law that the 2015 agreement does not moot their claims because, (a) although the revised subdivision plan that is the subject of the 2015 agreement has been approved by the Planning Board, it has not yet been accepted and maps have not been filed with the County Clerk, and (b) the parties agreed to hold the filing of these maps in abeyance until litigation is concluded.  (Dkt. No. 13, at 12 [Pls.' Opp'n Mem. of Law].)  Plaintiffs therefore appear to argue that, because, the maps have not been filed on the revised subdivision, the revised subdivision is not actually final.  Defendant CMBK appears to concede that the 2015 agreement created a stay of the obligations outlined in the agreement while litigation is ongoing.  (Dkt. No. 15, at ¶¶ 7, 11-12 [Burrows Reply Aff.].)

        Instead, Defendant CMBK appears to argue that the stay imposed by the agreement does not currently apply to this litigation because this litigation challenges not the 2015 revised subdivision plan but determinations occurring before that agreement.  (Dkt. No. 15, at ¶ 13 [Burrows Reply Decl.].)  This argument finds some support in the 2015 agreement, which states that, "[i]n the event that there is litigation challenging *the land use approvals granted herein* or by the Zoning Board of Appeals for this Project, the Applicants obligations herein shall be

stayed until there is a final legal resolution of the litigation." (Dkt. No. 15, Attach. 1, at 4 [emphasis added].) However, other evidence establishes that the parties have in fact been treating this litigation as a stay of the 2015 agreement.[3] For example, in a letter dated February 22, 2018, Plaintiffs' attorney Paul Curtin, Jr., stated that, "[a]s a result of intervening and ongoing litigation, timelines for completion of [certain terms of the 2015 agreement] has been extended and continues to be extended at this time." (Dkt. No. 13, Attach. 6, at 1.) Similarly, in a letter dated April 17, 2018, Defendants' attorney James A. Burrows states that "[i]t remains my understanding that potential activities that might be undertaken by the parties in this matter are stayed pending the ongoing litigation. As a result, the original executed mylars/maps remain undated and are being held by me in escrow pending resolution of the outstanding litigation; or at a sooner date if agreed upon by the parties." (Dkt. No. 13, Attach. 7, at 1.)

Based on the submitted evidence, the parties appear to be operating under the assumption that certain key obligations under the 2015 agreement are stayed pending the outcome of this litigation. While the Court might reach a different conclusion on a motion for summary judgment, the presence of this stay is not conducive to a finding at this time that the 2015 agreement has caused Plaintiffs' claims to be moot. The Court therefore rejects mootness as a ground on which to grant Defendants' motions.

---

[3] Although the other Defendants argue that the Court should not consider any outside material submitted by Plaintiffs with their opposition on a motion to dismiss, the Court notes that it is permitted to consider extrinsic evidence for the purpose of determining the existence of subject-matter jurisdiction. *Luckett*, 290 F.3d at 497; *Celestine*, 289 F. Supp. 2d at 399. It is therefore proper for the Court to consider extrinsic evidence related to the 2015 agreement.

**D.** **Whether Plaintiffs' Constitutional Claims Against the Other Defendants Are Ripe for Adjudication**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in the other Defendants' memoranda of law. *See, supra*, Parts I.B.2 and I.B.5 of this Decision and Order. To those reasons, the Court adds the following analysis.

**1.** **Takings Claim**

For a takings claim to be ripe, "the plaintiff must 'show that (1) the state regulatory entity has rendered a final decision on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure.'" *Sherman v. Town of Chester*, 752 F.3d 554, 561 (2d Cir. 2014) (quoting *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 [2d Cir. 2002]). These are prudential rather than jurisdictional rules and therefore need not be applied in every situation. *Sherman*, 752 F.3d at 561.

As to the first prong of the analysis, "a plaintiff alleging discrimination in the context of a land-use dispute is subject to the final-decision requirement unless he can show that he suffered some injury independent of the challenged land-use decision. Thus, for example, a plaintiff need not await a final decision to challenge a zoning policy that is discriminatory on its face . . . or the manipulation of a zoning process out of discriminatory animus to avoid a final decision. . . . In those cases, 'pursuit of a further administrative decision would do nothing further to define [the] injury,' and the 'claim should not be subject to the application of the *Williamson* ripeness test.'" *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 123 (2d Cir. 2014). Furthermore, "'[t]he finality requirement is not mechanically applied[;] . . . [a] property owner, for example, will be excused from obtaining a final decision if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile.'" *Sherman*, 752 F.3d at 561. Thus, "a property

owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." *Id.* (quoting *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 [2d Cir. 2005]). "Additionally, '[g]overnment authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision.'" *Sherman*, 752 F.3d at 561 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 621 [2001]). "The final decision requirement ensures that a court knows how far a regulation goes before it is asked to determine whether that regulation 'goes too far.'" *Sherman*, 752 F.3d at 563. "Every delay in zoning approval does not ripen into a federal claim. . . . But when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical, the high standard is met." *Id.*

Plaintiffs concede that there has not been a final decision as to their application for the original subdivision plan; rather, they argue that the finality requirement should not be rigidly applied in this case because "seeking a final decision on the Original Subdivision would be futile" in light of the fact that "Defendants used unfair procedures in order to avoid a final decision and, given [their] expressed animosity, would likely . . . continue[] to do so." (Dkt. No. 13, at 13-14 [Pls.' Opp'n Mem. of Law].) However, Plaintiffs' assertion of futility is not persuasive.

In *Sunrise Detox*, the Second Circuit found that there was no basis to apply the futility exception to the final-decision requirement where the plaintiffs had not shown that pursuing an administrative appeal or applying for a variance would be futile. *Sunrise Detox, LLC*, 769 F.3d at 124. More specifically, the Second Circuit noted that the defendant city's Board of Appeals

did not lack the discretion to grant variances, and that the plaintiffs' "failure to 'submit [ ] at least one meaningful application for a variance' prevents us from determining whether the board 'has dug in its heels and made clear that all such applications will be denied.'" *Id.* (quoting *Murphy*, 402 F.3d at 348-49).

Additionally, in *Sherman v. Town of Chester*, the Second Circuit found futility where, "[o]ver ten years, Sherman was forced to spend over $5.5 million on top of the original $2.7 million purchase. As a result, he became financially exhausted to the point of facing foreclosure and possible personal bankruptcy. Moreover, at no point could Sherman force the Town to simply give a final 'yay or nay' to his proposal. When asked at argument, the Town's counsel could not name one way Sherman could have appealed any aspect of the Town's decade of maneuvers in order to obtain a final decision." *Sherman*, 752 F.3d at 563.

In this case, as in *Sunrise Detox*, Plaintiffs do not allege that Defendant Village and its Village Board lack the discretion to grant variances, nor do they allege that they submitted an application for a variance from the newly-enacted zoning regulation before filing this action. (*See generally* Dkt. No. 2 [Pls.' Compl.].) Nor is there any allegation that Plaintiffs simply had no way to apply for a variance or other relief. Rather, it appears that Plaintiffs' response to the Village's actions was to (a) enter into an agreement to reduce the number of residential parcels to ten, and (b) file this action. (*Id.* at ¶ 58.) Plaintiffs' attempt to show that further efforts would be futile by arguing that Defendants Geurtsen and Quinn are hostile towards Plaintiffs is not persuasive because, without having made any efforts, it is impossible for this Court to determine that the Village Board really had "dug in its heels" on the issue of the original subdivision.

Plaintiffs' original subdivision plan for 13 parcels was approved in May 2006, while a revised map was approved in or about June 2010; Plaintiffs were unable to file the map with the County Clerk due to "issues with the infrastructure that had been approved by the Village" and Plaintiffs therefore had to seek reapproval of the original subdivision on August 6, 2014.  (Dkt. No. 2, at ¶¶ 14, 16, 21-22, 25 [Pls.' Compl.].)  It is not until this reapproval application in August 2014 that Plaintiffs allege that Defendants took obstructive action, namely using the pretense of an incomplete application to justify waiting to consider the application until after the alleged discriminatory zoning changes were implemented.  (*Id.* at ¶¶ 33-56.)  Rather than relying on the sort of lengthy "repetitive and unfair procedures" implemented by the defendant in *Sherman*, Plaintiffs rely on only two actions occurring at or around the same time (i.e., the change in zoning laws and the refusal to approve Plaintiffs' reapproval application) as the basis for their claims as to Defendants' allegedly unconstitutional conduct.  Although the temporal proximity of these two actions is perhaps suspicious, it does not, without more, show that the Village's actions were "so unreasonable, duplicative, or unjust as to make the conduct farcical."  *Sherman*, 752 F.3d at 563.  Additionally, Plaintiffs do not allege that Defendants have obstructed the approval of the revised subdivision plan; rather, Plaintiffs simply allege that, pursuant to the agreement, they are required to complete infrastructure work before being able to obtain certificates of occupancy on already-completed buildings.  (*Id.* at ¶ 60.)  The fact that Defendants have not continued to obstruct Plaintiffs' efforts undercuts their allegation that Defendants have engaged in an unreasonable and repetitive pattern of conduct towards them so as to suggest that any attempt to appeal or obtain a variance would have been futile.

Finally, although the Second Circuit has recognized that "an alleged physical taking is by definition a final decision," the Court finds that the loss of two parcels effected by the 2015 agreement does not constitute a physical taking because Plaintiffs base their takings claim on Defendants' change in the zoning laws and allegedly improper delay in approving the original subdivision, not on the actual loss of those parcels. *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 513 (2d Cir. 2014).

For the above reasons, Plaintiffs have not shown any reason why the final-decision requirement should not be applied to this case. Because there has not been a final decision, Plaintiffs' takings claim is not ripe. The Court therefore need not address whether Plaintiffs have sought just compensation through state procedure.[4] The Court grants the other Defendants' motion to dismiss Plaintiffs' takings claim against them under the Fifth Amendment on ripeness grounds.

### 2. Equal Protection, Due Process, and First Amendment Claims

Although the ripeness analysis discussed above was originally applied in the context of a takings claim, courts have extended it to also apply to equal protection and due process claims in the context of a land-use challenge. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) (collecting cases).

The Court finds that these claims are unripe due to lack of a final decision for the same reasons discussed above in Part III.D.1 of this Decision and Order. Consequently, the Court

---

[4] The Court notes that the removal of this case from state court to federal court would constitute a waiver of only the state compensation prong, not the final-decision prong. *Sherman v. Town of Chester*, 752 F.3d 554, 563-64 (2d Cir. 2014) (citing *Sansotta v. Town of Nags Head*, 724 F.3d 533, 544-57 [4th Cir. 2013]).

grants the other Defendants' motion to dismiss Plaintiffs' federal equal protection and due process claims against them on ripeness grounds.

The Court notes that the Second Circuit also specifically applied the same analysis to a First Amendment retaliation claim in the context of a land use challenge in *Dougherty*, although it stated that the ripeness doctrine is "somewhat relaxed" in that context due to the greater need for immediate protection to defend the rights of free expression and association. *Dougherty*, 282 F.3d at 89-90.[5] The relevant inquiry of whether the ripeness doctrine requirement of a final decision should be applied to a First Amendment claim includes considering (a) whether the plaintiff experienced an immediate injury as a result of the defendant's actions, and (b) whether requiring the plaintiff to pursue additional administrative remedies would further define their alleged injuries. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 351 (2d Cir. 2005) (citing *Dougherty*, 282 F.3d at 90).

The Court finds that the ripeness doctrine should be applied to Plaintiffs' First Amendment claim. Plaintiffs have not shown how the change in zoning regulations or refusal to consider their reapproval application resulted in an immediate injury. As discussed above in relation to their takings claim, Plaintiffs did not attempt to request a variance from the newly enacted zoning regulations. Nor is it clear that Plaintiffs' application for reapproval was

---

[5] The other Defendants did not argue in their memorandum of law that the First Amendment claim should also be dismissed on ripeness grounds. (Dkt. No. 6, Attach. 2, at 12 [Other Defs.' Mem. of Law] ["Plaintiffs' causes of action for takings, equal protection, and due process all must be dismissed as unripe."].) However, Defendants do raise an argument as to ripeness in their reply memorandum of law. (Dkt. No. 17, at 10-11 [Other Defs.' Reply Mem. of Law].) While an argument raised for the first time on reply is ordinarily waived, issues of subject-matter jurisdiction cannot be waived. *Oscar Gruss & Son, Inc.*, 337 F.3d at 193. Additionally, the Court has the ability to consider matters of subject-matter jurisdiction *sua sponte*. *Id.*; *see also* Fed. R. Civ. P. 12(h)(3).

definitively denied such that seeking a variance would have been a futile action. Instead,

Plaintiffs entered into an agreement with Defendants to reduce the number of parcels. It is

therefore not clear that Plaintiffs suffered an immediate injury as the result of the other

Defendants' actions, or what the extent of that injury was. For these reasons, the Court finds that

Plaintiffs' First Amendment claim against the other Defendants is also not ripe and must be

dismissed.[6]

### E. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiffs' State Constitutional Claims

After careful consideration, the Court answers this question in the negative. Because the

Court has found that it does not have the subject-matter jurisdiction at this time to consider

Plaintiffs' federal claims, the Court may not exercise supplemental jurisdiction over Plaintiffs'

state law claims. *See Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (finding

that "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis

---

[6] In the alternative, the Court finds that Plaintiff Liberty's First Amendment claim should be dismissed based on a failure to state a claim. Plaintiffs claim that the Village's refusal to consider Plaintiffs' land use application was a denial of its right to petition for redress of grievances, alleging that "[l]and use applications are a form of petition to the government." (Dkt. No. 2, at ¶¶ 113-115 [Pls.' Compl.].) However, Plaintiffs' land use application was not for the purpose of seeking redress of any wrong, but for the purpose of seeking reapproval of their subdivision plan. Plaintiffs also allege that a refusal to allow them to be heard at a meeting of the Planning Board was a denial of their right to petition for redress of grievances. (*Id.* at ¶¶ 116-118.) However, Plaintiffs conflictingly allege elsewhere that they were permitted to present a complete application for reapproval at the Planning Board meeting on August 20, 2014. (*Id.* at ¶ 38-42.) Plaintiffs therefore have failed to plausibly allege that they were denied any right to be heard, and have also failed to plausibly allege how any failure to be heard would implicate their First Amendment rights as opposed to their rights under the Due Process Clause. Plaintiffs therefore have not plausibly alleged that Plaintiff Liberty engaged in speech or conduct that is protected by the First Amendment. *See B.A. o/b/o M.G., Jr. v. City of Schenectady Sch. Dist.*, 209 F. Supp. 3d 515, 525-26 (N.D.N.Y. 2016) (Hurd, J.) (noting that, in order to establish a claim of First Amendment retaliation, the plaintiff must show, among other things, that "his speech or conduct was protected by the First Amendment").

for original federal jurisdiction,'" and that "[i]t follows that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to [Fed. R. Civ. P.] 12[b][1], the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims").

**ACCORDINGLY**, it is

**ORDERED** that Defendant CMBK's motion to dismiss (Dkt. No. 4) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the other Defendants' motion to dismiss (Dkt. No. 6) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 2) is **<u>DISMISSED</u>**; and it is further

**ORDERED** that Plaintiffs' state constitutional claims are **REMANDED** to Jefferson County Supreme Court.

Dated: September 26, 2018
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge